**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INTAKE BREATHING TECHNOLOGY, LLC, <br><br>  Plaintiff, <br><br> v. <br><br> REGENEX CO, <br><br>  Defendant. | Case No.: 1:25-cv-04751 <br><br> **JURY TRIAL DEMAND** |

**VERIFIED COMPLAINT**

Plaintiff Intake Breathing Technology, LLC ("Plaintiff") hereby brings the present action against Regenex Co. ("Regenex" or "Defendant"), and alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction).

2. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b). Defendant Regenex maintains a regular and established place of business within this District and has committed acts of infringement here.

3. Specifically, Regenex operates a warehouse located at 1055 Sesame Street, Franklin Park, Illinois 60131, from which it stores, ships, and distributes the accused infringing products to customers within the United States, including customers located in this District. This warehouse constitutes a regular and established place of business under the standards set forth in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), and its progeny.

4. Accordingly, venue is proper in this District under 28 U.S.C. § 1400(b) because Regenex has committed acts of infringement in this District and maintains a regular and established place of business here.

## II. INTRODUCTION

5. Plaintiff filed this case to prevent e-commerce store operators like Defendant who deliberately choose to ignore multiple infringement notices and brazenly continue to infringe upon Plaintiff's patented invention from further selling and/or offering for sale unauthorized products.

6. Plaintiff is forced to file this action to combat Defendant's infringing of its patented invention, as well as to protect consumers from purchasing unauthorized products over the internet. Plaintiff has been, and continues to be, irreparably damaged through loss of market share and erosion of Plaintiff's patent rights because of Defendant's actions and therefore seeks injunctive and monetary relief.

## III. THE PARTIES

7. Plaintiff, Intake Breathing Technology, LLC, is a California corporation with its principal place of business at 614 Santa Barbara Street, Ste. A, Santa Barbara, CA 93101 and is the owner of the patent asserted in this action.

8. Plaintiff is the owner of all right, title, and interest in U.S. Patent Nos. 9,510,969 ("the '969 Patent" or "the Asserted Patent"). A true and correct copy of Plaintiff's Patent is attached hereto as **Exhibit 1**.

9. The '969 Patent issued on December 6, 2016. *See **Id**.*

10. The '969 Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

11. The patented nasal dilator technology was invented by James D. Castillo, a prolific inventor and motorsports enthusiast who holds multiple patents across various fields. The idea for the nasal dilator was first conceived during a motorcycle excursion. While wearing goggles, Mr. Castillo experienced discomfort and difficulty breathing due to the pressure on his nose. This experience prompted him to improvise a device that would keep the nostrils open – even under pressure – leading to the initial development of the nasal dilator technology.

12. The concept resurfaced during a family gathering, where Mr. Castillo realized that this innovation could have a broader application for people struggling with nasal breathing in everyday life. What started as a solution for an isolated motor-sports problem evolved into a novel and widely useful device. That idea became a reality through years of design, development, and refinement, ultimately resulting in the patented technology at issue in this case.

13. Plaintiff developed a product line embodying the Asserted Patent under the brand name "Intake Breathing" ("Plaintiff's Products"), which is sold exclusively through its website (www.intakebreathing.com), and on e-commerce platforms such as Amazon.com, Instagram, and TikTok, just to name a few. Plaintiff's product line includes nasal dilator devices designed to improve airflow and enhance breathing comfort for consumers.

14. Plaintiff displays the URL on the packaging to Plaintiff's website (https://help.intakebreathing.com), where Plaintiff displays a list of its products, and which patents those products embody.

15. In addition, Plaintiff expressly identifies its patented technology on its Amazon.com product listings, thereby providing clear public notice—including to competitors and infringers—of its patent rights. This public disclosure further underscores the willful nature of the

infringement by those who continue to copy Plaintiff's images, advertising materials, and patented product designs despite actual or constructive notice.

16. On information and belief, Defendant Regenex is a Texas corporation, with a principal place of business at 1215 Executive Drive West, Richardson, TX 75081

17. On information and belief, Defendant operates a warehouse located at 1055 Sesame Street, Franklin Park, Illinois 60131, from which it stores, ships, and distributes the accused infringing products to customers within the United States, including customers located in this District.

18. On information and belief, Defendant operates one or more e-commerce stores under https://shopregenexco.com and http://regenexco.shop.

19. On information and belief, Defendant has also aggressively launched advertising campaigns on TikTok and other social media platforms using influencers to offer to sell or sell the unauthorized products, even going so far as offering a significant amount in commissions, thereby undercutting Plaintiff's products and sales.

## IV. DEFENDANT'S UNLAWFUL CONDUCT

20. The success of Plaintiff's Products has resulted in significant infringement of Plaintiff's Patent. Due to the growing popularity and demand for the patented nasal dilator technology, opportunistic sellers have entered the market with infringing products that closely mimic Plaintiff's designs. As a result of this ongoing infringement, Plaintiff is currently losing sales in the six-figure range on a monthly basis, severely impacting its ability to capitalize on its own innovation and recover its investment in product development and marketing.

21. Because of this, Plaintiff has implemented a comprehensive anti-infringement program that involves investigating suspicious websites and online marketplace listings identified

4

through proactive Internet sweeps. Plaintiff has devoted substantial time and resources to submitting takedown requests and monitoring compliance across multiple e-commerce platforms. These efforts have required many hours that could otherwise be dedicated to product development, marketing, and legitimate business growth. Despite Plaintiff's diligence, the takedown campaigns have yielded only limited success, as infringing sellers often reappear under different storefront names or relocate to new platforms. As such, Plaintiff is left with no meaningful remedy other than seeking this Court's intervention to halt the widespread infringement and preserve its rights under the law.

22. Defendant is not only offering identical products, but is also unlawfully using Plaintiff's copyrighted advertisements and proprietary packaging, creating consumer confusion and further compounding the harm to Plaintiff's brand and reputation. These unauthorized uses mislead consumers into believing they are purchasing legitimate Intake Breathing products, thereby diverting sales and undermining Plaintiff's hard-earned goodwill.

23. Prior to initiating this lawsuit, Plaintiff made multiple good-faith efforts to notify Defendant of its infringement and to resolve the matter without litigation. Specifically, Plaintiff sent multiple notices to Defendant in September 2024, November 2024, two additional notices in March 2025, demanding that Defendant immediately cease and desist from further marketing, offering for sale, or selling the unauthorized products. Defendant ignored the communication.

24. Finally, on April 2, 2025, Plaintiff's counsel served a formal cease and desist letter, expressly outlining Defendant's infringement of U.S. Patent Nos. 9,510,969 and 10,675,174, and demanding that Defendant immediately cease its unlawful activities, remove infringing products from the marketplace, and provide a full accounting of its sales. In response, Defendant's counsel

engaged in communications with Plaintiff's counsel and, after multiple exchanges, affirmatively represented that Defendant had ceased all sales of the accused products.

25. However, rather than discontinuing its infringing activities, Defendant merely created a new website, www.regenexco.shop (**Exhibit 2**), and continued selling the unauthorized products under a different domain name. Defendant's actions not only contradict the assurances made through its counsel but also demonstrate a calculated effort to deceive Plaintiff, necessitating this action.

## COUNT I
## PATENT INFRINGEMENT (15 U.S.C. § 271) – THE '969 PATENT

26. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

27. As shown, Defendant is knowingly and willfully manufacturing, importing, distributing, offering for sale, and selling infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendant, without any authorization or license from Plaintiff, has knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the '969 Patent.

28. The Unauthorized Products being sold by Defendant infringes at least Claim 1 of the '969 Patent. For purposes of notice pleading, Plaintiff shows below how the Regenex Magnetic Nasal Strips infringe claim 1 of the '969 Patent.

29. Defendant's infringing Regenex Magnetic Nasal Strips are "[a] disposable apparatus attachable to a nose of a wearer and configured for use with a magnet positioned adjacent to the nose of the wearer, the disposable apparatus comprising:" – Defendant's Regenex Magnetic Nasal Strips are marketed as externally applied, flexible strips intended to open nasal passages and

are worn across the nose. Defendant's Regenex Magnetic Nasal Strips include a magnetic feature positioned adjacent to the nose during use.

30. "a flexible base layer including a first surface and an opposing second surface, the first surface having an adhesive disposed thereon to enable the first surface to be selectively attachable to the nose of the wearer" – Defendant's Regenex Magnetic Nasal Strips are constructed with a flexible backing layer coated on one side with medical-grade adhesive, allowing it to be attached to the nasal bridge as shown on the product page at https://regenexco.shop/products/regenex-magnetic-nasal-strips (last visited April 29, 2025).

31. "a metallic element coupled to the second surface of the base layer and being configured to interact with the magnet when the magnet is positioned adjacent the nose of the wearer and the flexible base layer is attached to the nose of the wearer, the interaction between the metallic element and the magnet imparting a dilating force of the nose of the wearer causing the nose of the wearer to dilate; and" – Defendant's Regenex Magnetic Nasal Strips include a metallic insert or embedded structure on the upper (non-adhesive) side of the strip that interacts with a magnetic component, such that this interaction generates lateral tension or lift on nasal tissue to promote dilation as shown on the product page at https://regenexco.shop/products/regenex-magnetic-nasal-strips (last visited April 29, 2025).

32. "an outer layer coupled to the base layer and extending over the metallic element to at least partially cover the metallic element;" – Defendant's Regenex Magnetic Nasal Strips have a top cover layer – plastic or polymer – that conceals or protects internal structural components, including the metallic element, as shown on the product page at https://regenexco.shop/products/regenex-magnetic-nasal-strips (last visited April 29, 2025).

33. "at least a portion of the flexible base layer extending radially outward beyond the metallic element to define a flexible peripheral portion;" – Defendant's Regenex Magnetic Nasal Strips feature flared, adhesive outer regions extending beyond the metallic element, allowing peripheral flexibility consistent with the claim.

34. "the metallic element being configured to allow for movement of the magnet relative to the metallic element when the magnet is magnetically engaged with the metallic element;" – Defendant's Regenex Magnetic Nasal Strips allows for some movement or repositioning during engagement, and is not permanently affixed – permitting magnetic alignment while allowing dynamic tension.

35. "the disposable apparatus, while being attached to the nose of the wearer, being selectively transitional between an active state and an inactive state, in the active state, the metallic element magnetically interacts with the magnet to impart the dilating force on the nose of the wearer, in the inactive state, the metallic element is magnetically decoupled from the magnet to cease imparting of the dilating force on the nose of the wearer." – Defendant's Regenex Magnetic Nasal Strips include a functional mode where magnetic coupling occurs during use (active) and decouples when removed (inactive), consistent with how nasal dilation devices apply/release force depending on contract status.

36. As a result of Defendant's infringement of the '969 Patent, Plaintiff has been injured by Defendant's unauthorized use of Plaintiff's intellectual property. Plaintiff seeks monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are enjoined.

37. Unless an injunction is issued enjoining Defendant and its agents, servants, employees, representative, affiliates, and all others acting or in active concert therewith from infringing the '969 Patent, Plaintiff will be greatly and irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1) That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiff's Patent; and

   b. Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patent.

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms shall disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of goods that infringe Plaintiff's Patent.

3) That Judgment be entered against Defendant finding that it has infringed upon Plaintiff's Patent.

4) That Judgment be entered against Defendant finding that infringement of Plaintiff's Patent has been willful.

5) That Plaintiff be awarded damages for such infringement in an amount to be proven at trial, in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284, together with interests and costs.

6) That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendant' willful infringement of Plaintiff's Patent.

7) A finding that this case is exceptional under 35 U.S.C. § 285.

8) That Plaintiff be awarded its reasonable attorneys' fees and costs.

9) Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 29, 2025                    Respectfully submitted,

/s/ Nicholas S. Lee
Nicholas S. Lee
NSLee@dickinsonwright.com
Sameeul Haque
SHaque@dickinson-wright.com
Briana Y. Hammons
BHammons@dickinson-wright.com
Dickinson Wright PLLC
55 West Monroe Street
Suite 1200
Chicago, Illinois 60603
(312) 641-0060

*Counsel for Intake Breathing Technology, LLC*

# VERIFICATION

I, Alex Hauck, hereby certify as follows:

1. I am the Chief Executive Officer for Intake Breathing Technology LLC. As such, I am authorized to make this Verification on Intake Breathing Technology LLC's behalf.

2. I have read the foregoing Verified Complaint and, based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Complaint are true.

3. I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed in _Santa Barbara, CA_ on April _29_, 2025

_____
Alex Hauck
CEO
Intake Breathing Technology LLC